## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA

### CHARLESTON DIVISION

| | | |
|---|---|---|
| ANTONIO PARNELL, | ) | |
| | ) | |
| Movant, | ) | |
| | ) | |
| v. | ) | **CIVIL ACTION NO. 2:20-00145** |
| | ) | **(Criminal No. 2:18-00147)** |
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Respondent. | ) | |

### PROPOSED FINDINGS AND RECOMMENDATION

Pending before the Court is Movant's Motion Under 28 U.S.C. § 2255 to Vacate, Set Aside or Correct Sentence by a Person in Federal Custody and Memorandum in Support.[1] (Document Nos. 58 and 59.) By Standing Order, this matter was referred to the undersigned United States Magistrate Judge for submission of proposed findings of fact and a recommendation for disposition pursuant to 28 U.S.C. § 636(b)(1)(B). (Document No. 61.)

### FACTUAL AND PROCEDURAL BACKGROUND

1. **Criminal Action No. 3:14-00197:**

On August 22, 2018, Movant pled guilty to one count of being a felon in possession of a firearm in violation of 18 U.S.C. §§ 922(g)(1) and 924(a)(2) as charged in the Information. (Criminal Action No. 2:18-00147, Document Nos. 28, 30, 31.) A Presentence Investigation Report was prepared. (Id., Document No. 52.) The District Court determined that Movant had a Base Offense Level of 20, and a Total Offense Level of 23, the Court having applied the following: (1)

---

[1] Because Movant is acting *pro se*, the documents which he has filed in this case are held to a less stringent standard than if they were prepared by a lawyer, and therefore they are construed liberally. *See Haines v. Kerner*, 404 U.S. 519, 520-21, 92 S.Ct. 594, 30 L.Ed.2d 652 (1972).

A two-level enhancement pursuant to U.S.S.G. § 2K2.1(b)(1)(A) because Movant was in possession of three firearms; (2) A two-level enhancement pursuant to U.S.S.G. § 3C1.1 for obstruction of justice; (3) A two level enhancement pursuant to U.S.S.G. § 2K2.1(b)(4)(A) because the offense involved two stolen firearms; and (4) a three-level reduction for acceptance of responsibility pursuant to U.S.S.G. § 3E1.1(a) and (b). (Id., Document No. 51 and 52.) The District Court sentenced Movant on April 8, 2019, to serve an 84-month term of imprisonment, to be followed by a three-year term of supervised release. (Id., Document Nos. 47 and 49.) The District Court also imposed a $100 special assessment. (Id.)

**2.      Section 2255 Motion:**

On February 21, 2020, Movant, acting *pro se*, filed his instant Motion Under 28 U.S.C. § 2255 to Vacate, Set Aside, or Correct Sentence by a Person in Federal Custody and Memorandum in Support. (Civil No. 2:20-00145, Document Nos. 58 and 59.) As grounds for *habeas* relief, Movant alleges the following: (1) "Ineffective assistance of counsel during plea negotiation process;" (2) Counsel was ineffective in failing to object to breach of the Plea Agreement; (3) In light of Rehaif v. United States, 139 S.Ct. 2191 (2019), Movant was not fully informed of the nature of the charges that he pled guilty to and accepting the plea was plain error; (4) Counsel was ineffective in failing to object to "a surprise enhancement at sentencing;" (5) Counsel was ineffective in failing to file notice of appeal. (Id.) As relief, Movant requests that his "sentence and indictment be vacated." (Id.)

By Order entered on February 28, 2020, the undersigned directed trial counsel, Lex Coleman, to file an affidavit responding to Movant's claims of ineffective assistance of counsel and the United States to file its Answer. (Id., Document No. 63.) Following the granting of

2

extensions of time, Attorney Coleman filed his Affidavit on July 15, 2020. (Id., Document No. 77.) On August 27, 2020, the United States filed its Response in Opposition to Movant's Section 2255 Motion. (Id., Document No. 85.) On December 9, 2019, Movant filed his Reply. (Id., Document No. 87.)

## DISCUSSION

The relevant portion of Section 2255 provides as follows:

> A prisoner in custody under sentence of a court established by Act of Congress claiming the right to be released upon the ground that the sentence was imposed in violation of the Constitution or laws of the United States, or that the court was without jurisdiction to impose such sentence, or that the sentence was in excess of the maximum authorized by law, or is otherwise subject to collateral attack, may move the court which imposed the sentence to vacate, set aside or correct the sentence.

A motion made pursuant to Section 2255 is a collateral attack on a conviction or sentence. To succeed on a Section 2255 motion, the movant must prove that "his sentence or conviction was imposed in violation of the Constitution or law of the United States, that the court was without jurisdiction to impose such a sentence, that the sentence exceeded the maximum authorized by law, or that the sentence otherwise is subject to collateral attack." 28 U.S.C. § 2255. "A motion collaterally attacking a petitioner's sentence brought pursuant to § 2255 requires the petitioner to establish his grounds by a preponderance of the evidence." Sutton v. United States, 2006 WL 36859, * 2 (E.D.Va. Jan. 4, 2006).

## 1.    Ineffective Assistance of Counsel:

Indigent criminal defendants have the constitutional right to effective assistance of counsel through direct appeal. Anders v. California, 386 U.S. 738, 87 S.Ct. 1396, 18 L.Ed.2d 493 (1967) When a movant claims ineffective assistance of counsel as a basis for seeking relief under Section 2255, the burden is on the movant to prove that his trial attorney failed to render effective

3

assistance. <u>Strickland v. Washington</u>, 466 U.S. 668, 689, 104 S.Ct. 2052, 2065, 80 L.Ed.2d 674 (1984). In <u>Strickland</u>, the Court adopted a two-pronged test for determining whether a defendant received adequate assistance of counsel. <u>Id.</u> The first prong is competence. The movant must show that the representation fell below an objective standard of reasonableness. <u>Strickland</u>, 466 U.S. at 687 - 691, 104 S.Ct. at 2064 - 2066. There is a strong presumption that the conduct of counsel was in the wide range of what is considered reasonable professional assistance, and a reviewing Court must be highly deferential in scrutinizing the performance of counsel. <u>Strickland</u>, 466 U.S. at 688-89, 104 S.Ct. at 2065 - 2066.

> A convicted defendant making a claim of ineffective assistance must identify the acts or omissions of counsel that are alleged not to have been the result of reasonable professional judgment. The court must then determine whether, in light of all the circumstances, the identified acts or omissions were outside the wide range of professionally competent assistance. . .. [C]ounsel is strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment.

<u>Strickland</u>, 460 U.S. at 690, 104 S.Ct. at 2066. The Court will not second-guess an attorney's tactical decisions unless they appear unreasonable in view of all of the circumstances. <u>Goodson v. United States</u>, 564 F.2d 1071, 1072 (4th Cir. 1977). The second prong is prejudice. The movant must show that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." <u>Strickland</u>, 466 U.S. at 694, 104 S.Ct. at 2068; <u>Hill v. Lockhart</u>, 474 U.S. 52, 59, 106 S.Ct. 366, 370, 88 L.Ed.2d 203 (1985). An attorney's mere mistake, ignorance or inadvertence does not suffice for proof of ineffective assistance. <u>Murray v. Carrier</u>, 477 U.S. 478, 106 S. Ct. 2639, 2645-46, 91 L.Ed.2d 397 (1986)("So long as a defendant is represented by counsel whose performance is not constitutionally ineffective under the standard established in <u>Strickland v. Washington</u>, . . . we discern no inequity in requiring him to bear the

4

risk of attorney error that results in a procedural default.") The movant must therefore show (1) that his attorney's performance was constitutionally inadequate, i.e., that he committed errors so serious that his performance "fell below an objective standard of reasonableness" and (2) that his attorney's performance prejudiced him such that it rendered the proceeding fundamentally unfair or made the result unreliable. <u>Strickland</u>, 466 U.S. at 687 - 88, 104 S.Ct. at 2064 - 2065; <u>Fitzgerald v. Thompson</u>, 943 F.2d. 463 (4th Cir. 1991), <u>cert. denied</u>, 502 U.S. 1112, 112 S.Ct. 1219, 117 L.Ed.2d 456 (1992).

**A.    Counsel's alleged failure to object to the breach of the Plea Agreement.**

In his Motion, Movant alleges that counsel failed to object to the breach of the Plea Agreement. (Civil Action 2:20-00145, Document Nos. 59, pp. 9 – 11.) Movant alleges that he "entered into a Plea Agreement with a Base Level of 13 and Criminal History Category of V, resulting in an advisory Guideline recommended sentence of 30 to 37 months." (<u>Id.</u>) Movant complains that "the Probation Department recommended that a 2k2.1 enhancement be applied at sentencing" and Attorney Coleman "stood mute as the Government began to advocate for an increased sentenced based on the assumption that [Movant] was in possession of guns." (<u>Id.</u>) Movant complains that the District Court adopted the United States' position applying an enhancement pursuant to U.S.S.G. § 2k2.1. (<u>Id.</u>) Movant, however, argues that this was an error because Movant "was NEVER in possession of any firearm." (<u>Id.</u>) Movant contends that Attorney Coleman "advised him that in the worst-case scenario [Movant] was looking at 46 months due to the obstruction of justice enhancement." (<u>Id.</u>) Movant alleges that Attorney Coleman "reassured [Movant] that the Honorable Judge Copenhaver would not enhance his sentence for the other guns charged in the Information . . . "[d]ue to taking this plea." (<u>Id.</u>) Movant complains that Attorney

Coleman was ineffective in his failure to object to the enhancement as constituting a breach of the Plea Agreement. (<u>Id.</u>)

In his Affidavit, Attorney Coleman states there "was no basis at [Movant's] sentencing to argue that the United States had breached any provision of the plea agreement." (<u>Id.</u>, Document No. 77, p. 14.) Attorney Coleman explains that "[n]othing in the plea agreement document ever stated that [Movant] or the United States were agreeing that a base offense level of 13 would apply, resulting in an advisory guideline range of 30 to 37 months imprisonment." (<u>Id.</u>) Attorney Coleman states that [n]othing in the plea agreement document tied either party to a specific guideline range, and [Movant] was advised before he signed the agreement what guideline issues would most likely need to be litigated at his sentencing." (<u>Id.</u>, pp. 14 – 15.) Attorney Coleman states that "I never advised [Movant] that his worst-case scenario would be a guideline sentence of only 46 months (before any plea offer was extended or after), nor did I tell him the Court would not enhance him for the other guns ultimately attributed to him in the final PSR." (<u>Id.</u>, p. 15.) Attorney Coleman, however, notes that he "did explain [his] concerns about other charges the United States could bring against [Movant], and on that basis recommended he accept the United States' plea offer." (<u>Id.</u>) Attorney Coleman asserts that he "consistently told [Movant] the most he could be sentenced to was the statutory maximum term of imprisonment of ten years." (<u>Id.</u>)

In Response, the United States argues that Movant's above claim of ineffective assistance of counsel is without merit because "there was no breach of the plea agreement." (<u>Id.</u>, Document No. 85, p. 8.) The United States argues that it was "not bound to ensure the [Movant] received a base offense level of 13." (<u>Id.</u>) The United States explains that "[n]othing in the plea agreement bound either party to a specific guideline range." (<u>Id.</u>) Specifically, the United States asserts that

it "made no representations with respect to [Movant's] base offense level or sentencing enhancements." (<u>Id.</u>, pp. 8 – 9.) The United States further notes that during Movant's Rule 11 colloquy, Movant explained that he understood the nature of the charge and the maximum sentence to which he was exposed under the plea agreement. (<u>Id.</u>, p. 9.) The United States, therefore, argues that Movant's above claim of ineffective assistance of counsel should be denied. (<u>Id.</u>) Movant failed to address the above issue in his Reply. (<u>Id.</u>, Document No. 87.)

The undersigned finds that Movant's above argument that Attorney Coleman acted ineffectively in failing to the object to the United States' breach of the Plea Agreement, is without merit. A review of the record reveals that Movant's Plea Agreement was not breached by the United States. The written Plea Agreement provided that "Mr. Parnell will plead guilty to a violation of 18 U.S.C. §§ 922(g)(1) and 924(a)(2) (convicted felon in possession of firearms) as charged in said information." (Criminal No. 2:18-00147, Document No. 31, p. 1.) The Information was attached as Exhibit A. (<u>Id.</u>, pp. 9 - 10.) The written Plea Agreement spelled out the maximum sentence to which Movant was subject by virtue of his plea. (<u>Id.</u>, pp. 1 - 2.) The Plea Agreement stated that if Movant was *not* determined to be an armed career criminal pursuant to 18 U.S.C. § 924(e), Movant faced a term of "imprisonment for a period of 10 years." (<u>Id.</u>, p. 2.) If Movant was determined to be an armed career criminal pursuant to 18 U.S.C. § 924(e), Movant faced a term of "imprisonment for a mandatory minimum term of at least 15 years and up to life." (<u>Id.</u>) Paragraph 13 of the Plea Agreement stated that "[t]he matter of sentencing is within the sole discretion of the Court. The United States has made no representations or promises as to the specific sentence." (<u>Id.</u>, p. 7.) Finally, paragraph 15 provided that "[this written agreement constitutes the entire agreement between the United States and Mr. Parnell in this matter." (<u>Id.</u>)

During the Plea Hearing, the terms of the Plea Agreement were thoroughly reviewed with Movant and he acknowledged that he understood the terms and consequences of signing the Plea Agreement. During the Rule 11 colloquy, the District Court thoroughly explained to Movant his sentencing exposure (with and without a finding that Movant was armed career offender) as a result of his plea and elicited Movant's statement that he knew that his sentence was in the Court's discretion. Movant further acknowledged that his plea was not the result of any promises or threats. The Fourth Circuit has recognized that "[i]n the absence of extraordinary circumstances, the truth of sworn statements made during a Rule 11 colloquy is conclusively established, and a district court should, without holding an evidentiary hearing, dismiss any § 2255 motion that necessarily relies on allegations that contradict the sworn statements. Otherwise, a primary virtue of Rule 11 colloquies would be eliminated - 'permit[ting] quick disposition of baseless collateral attacks." United States v. LeMaster, 403 F.3d 216, 220 (4th Cir. 2005). Furthermore, the record is completely void of any indication that Movant and the United States entered into a Plea Agreement agreeing to "a Base Level of 13 and Criminal History Category of V, resulting in an advisory Guideline recommended sentence of 30 to 37 months." Thus, there is absolutely no evidence that the United States breached the Plea Agreement. Accordingly, the undersigned finds that Movant cannot show that Attorney Coleman acted ineffectively in failing to pursue the above meritless arguments. See United States v. Kilmer, 167 F.3d 889, 893 (5th Cir. 1999)(stating that "[a]n attorney's failure to raise a meritless argument . . . cannot form the basis of a successful ineffective assistance of counsel claim because the result of the proceeding would not have been different had the attorney raised the issue"); Moore v. United States, 934 F.Supp. 724, 731 (E.D.Va. 1996)(holding that "there can be no claim of ineffective assistance where, as here, counsel is alleged to have failed to

raise a meritless argument"). Based upon the foregoing, the undersigned respectfully recommends that Movant's above claim of ineffective assistance of counsel be denied.

### B.    Counsel's alleged ineffectiveness during the plea negotiation process.

In his Motion, Movant alleges that counsel was ineffective during the plea negotiation process because Attorney Coleman "had a complete misunderstanding about the 922(g) count." (Civil Action No. 2:20-00145, Document No. 59, p. 11.) Movant contends that "the quality of legal advice contributing to [Movant's] decision to plead was based on information that was factually deficient." (Id., pp. 11 - 12.) Movant contends that Attorney Coleman failed to "do any research or provide a defense for the penalties." (Id., p. 12.) Movant claims that "there is a strong probability that Grand Jury may not have even returned an Indictment considering this case at bar began as a State case." (Id.) Movant alleges that had Attorney Coleman "properly advised [Movant] about the necessary steps needed to indict [him], the [Movant] may have elected to file motions, go to trial, and/or present a counter offer." (Id) Movant claims that Attorney Coleman refused to file a Motion to Suppress regarding the guns. (Id.) Movant complains that Attorney Coleman "never warned" him that he "could be ambushed with all kinds of additional enhancement, once he accepted their offer." (Id., p. 13.) Movant alleges that Attorney Coleman's "deficient advice thwarted the [Movant's] ability to make an intelligent decision about whether to proceed under the assumed name, sign off, or await the Government to prosecute the case by Grand Jury Indictment." (Id.) Movant claims that "under more befitting legal guidance, he would have been amendable to defending the charges." (Id.) Movant concludes that Attorney Coleman failed to explain matters to Movant "to the extent necessary to permit [Movant] to make an informed decision." (Id., p. 14.)

In his Affidavit, Attorney Coleman states that he provided Movant an "elements/penalties"

letter on May 25, 2018 (the day he was appointed as counsel) wherein Movant was notified of "his offense elements, in addition to what statutory penalties would apply if he was convicted." (Id., Document No. 77, p. 4.) Attorney Coleman explains that page 10 of the letter "explained relevant conduct under U.S.S.G. § 1B1.3 and how matters outside his specific offense of conviction could apply to determine his sentence if convicted." (Id.) Attorney Coleman attaches a copy of his "elements/penalties" letter as an Exhibit. (Id., Document No. 77-4.) Concerning the plea negotiations, Attorney Coleman explains that he was notified by AUSA Loew that he planned to indict Movant on June 19, 2018. (Id., Document No. 77, pp. 8 – 9.) Attorney Coleman states that AUSA Loew identified a specific recorded jail phone call that he wanted counsel to listen to and advised "any pre-indictment resolution would be off the table" after 2:00 p.m. on June 8, 2018. (Id., p. 9.) Attorney Coleman explains that AUSA Loew advised that he was "drafting an indictment bringing a number of different drug and gun charges against [Movant]," but he "expressed a willingness to accept a guilty plea under 18 U.S.C. § 922(g)(1) or § 922(j)." (Id.) Attorney Coleman explains that he discussed the plea offer with Movant, who acknowledge that he had said enough in the recorded jail call to his father to sustain a conviction on the charge in his criminal complaint. (Id., p. 11.) Attorney Coleman states that he further "pointed out how parts of his representation to his father could also easily support other charges with more serious statutory penalties." (Id.) Attorney Coleman states that Movant agreed for him to "pursue a single count § 922(g)(1) plea from the United States." (Id., p. 12.) Attorney Coleman explains that the first proposed plea agreement contained a factual basis stipulating that Movant possessed all three firearms seized on April 14, 2018. (Id., p. 13.) Attorney Coleman states that Movant did not want to stipulate or plead guilty to possessing all three firearms seized on April 14, 2018, so he continued

plea negotiations. (Id., pp. 13 – 14.) Attorney Coleman asserts that AUSA Loew sent a revised plea agreement wherein Movant stipulated to possessing only one firearm. (Id., p. 14.) Attorney Coleman states that prior to Movant signing the revised plea agreement, Movant was "forwarded a copy of [his] criminal history from his pretrial services report, which included a rough guidelines work up." (Id., p. 13.)

Next, Attorney Coleman acknowledges that he did not file a Motion to Suppress the guns. Attorney Coleman first explains that "during our various meetings, [Movant] and I had discussed suppressing one or all of the firearms, [but] once [Movant] listened to the call to his father – he conceded the problems with trying to actively defend his case further." (Id.) Attorney Coleman notes that Movant initially wanted to say the gun the officer allegedly saw in Movant's possession was a cell phone and the other guns located outside the house were not his. (Id.) Attorney Coleman explains that proceeding with this position, Movant would have "lacked standing to suppress property he was denying was his." (Id.) Attorney Coleman states that "there was no constitutional basis for effectively suppressing any of the guns that I could see – particularly after hearing the recording of [Movant] admit to his father that he threw down the gun, and that officers had found 'all' his 'guns.'" (Id., p. 13.) Attorney Coleman, therefore, acknowledges that he did not file a motion to suppress. (Id.) Finally, Attorney Coleman noted that "procedurally we were not even at the stage where a suppression motion could be filed" because Movant had not been indicted and there was no arraignment order or pretrial motion deadline. (Id.)

In Response, the United States argues that Movant's above claim of ineffective assistance of counsel is without merit because "given the extensive negotiations Mr. Coleman engaged in on [Movant's] behalf." (Id., Document No. 85, p. 10.) The United States claims that Movant fails to

produce any credible evidence that counsel's conduct was deficient or affected his decision to plead guilty. (Id.) The United States notes that Attorney Coleman actively pursued discovery and plea negotiations with the United States. (Id.) Specifically, the United States notes that Attorney Coleman "negotiated a more favorable plea agreement conditioned to [Movant's] preferences of not pleading guilty to possessing all three firearms seized on April 14, 2018." (Id.) Next, the United States notes that Attorney Coleman advised Movant of the possible enhancements that could apply and the additional charges the United States could bring against him. (Id., p. 11.) Finally, the United States notes that Movant's allegations directly contradict his testimony at the time of his Rule 11 plea colloquy. (Id.) Specifically, the United States asserts that Movant acknowledged that he understood the maximum possible penalty. (Id.) The United States argues that Movant has "failed to show that he received anything less than zealous and effective representation." (Id., p. 12.) Movant failed to address the above issue in his Reply. (Id., Document No. 87.)

Movant's allegation that Attorney Coleman was ineffective in failing to properly negotiate the Plea Agreement is without merit. Movant has failed to make specific allegations establishing reason to believe that, if the facts are fully developed, he is entitled to relief. United States v. Roane, 378 F.3d 382, 403 (4th Cir. 2004). Movant merely concludes that Attorney Coleman gave "deficient" advice and "there is a strong probability the Grand Jury may not have even returned an Indictment" against Movant. Attorney Coleman, however, thoroughly explains the discussions he had with Movant and the evidence against Movant. Attorney Coleman shared the evidence with Movant, and of great importance was a recorded jail call between Movant and his father wherein Movant made incriminating statements. Attorney Coleman explains that the AUSA Loew advised he was drafting an indictment bringing a number of different drug and gun charges against Movant,

but he expressed a willingness to accept a plea under 18 U.S.C. § 922(g)(1). Attorney Coleman represents that he discussed the plea offer with Movant, who acknowledge that he had said enough in the recorded jail call to his father to sustain a conviction on the charge in his criminal complaint (a violation of 18 U.S.C. § 922(g)(1)). (Id., p. 11.) Attorney Coleman further notes that he "pointed out how parts of [Movant's] representation to his father could also easily support other charges with more serious statutory penalties." (Id.) Attorney Coleman states that Movant agreed for him to "pursue a single count § 922(g)(1) plea from the United States." (Id., p. 12.) Attorney Coleman explains that the first proposed plea agreement contained a factual basis stipulating that Movant possessed all three firearms seized on April 14, 2018, but Attorney Coleman continued negotiations and AUSA Loew sent a revised plea agreement wherein Movant stipulated to possessing only one firearm. (Id., p. 14.) Thus, Movant's claim that he may not have been indicted is purely speculative given the weight of the evidence produced by the United States during discovery. There is no reasonable probability that the end result would have been more favorable to Movant by way of an indictment. As discussed by Attorney Coleman, the United States intended to seek an indictment of Movant on multiple drug and guns charges. Attorney Coleman explains that given his review of the evidence, he felt confident that Movant would have been indicted on multiple counts that would include higher statutory penalties. Movant has not shown that there is a reasonable probability that he would not have pled guilty but for the alleged ineffective assistance of counsel. Movant's allegations suggest that he is now suffering "buyer's remorse" regarding his plea deal and ultimate sentence. See Dingle v. Stevenson, 840 F.3d 171, 174 (4th Cir. 2016)("Pleading guilty typically entails a deliberate choice to accept the risks and rewards of a deal, and that decision may not be casually set aside on the basis of buyer's remorse."); See United

States v. Jackson, 554 Fed.Appx. 156, 165 (4th Cir. 2014)(Wilkinson, J., dissenting)("Buyer's remorse should not be dressed in the garb of an ineffective assistance of counsel claim."); United States v. Fugit, 703 F.3d 248, 260 (4th Cir. 2012)("Pleading guilty generally involves a conscious decision to accept both the benefits and burdens of a bargain. That decision may not be lightly undone by buyer's remorse on the part of one who reaped advantage from the purchase."). Based upon the foregoing, the undersigned finds that Movant cannot demonstrate that Attorney Coleman's above conduct fell below an objective standard of reasonableness or that Movant's was prejudiced by counsel's failure.

Next, Movant again appears to claim that he was unaware of his sentencing exposure. For the reasons explained in Section A above, the undersigned finds this claim to be without merit. The record further reveals that Attorney Coleman discussed the possible impact of the Sentencing Guidelines with Movant. The record reveals that on the same day Attorney Coleman was appointed as counsel, Attorney Coleman provided Movant with an "elements/penalties" letter wherein Movant was notified of "his offense elements, in addition to what statutory penalties would apply if he was convicted." (Criminal Action No. 2:18-00147, Document No. 77, p. 4 and Document No. 77-4.) On page 10 of the "elements/penalties letter," Attorney Coleman "explained relevant conduct under U.S.S.G. § 1B1.3 and how matters outside [Movant's] specific offense of conviction could apply to determine his sentence if convicted." (Id.) Prior to signing the Plea Agreement, Movant was provided a copy of his criminal history from his pretrial services report, which included a "rough guideline work up." Finally, the District Court advised Movant during his Plea Hearing of the advisory Sentencing Guidelines and explained how the Guidelines would apply to determine his sentence. The District Court explained that things such as Movant's role in the

offense, criminal history, and whether he was a career criminal would have an impact on this advisory Guideline range. Movant affirmed that he understood the foregoing. Thus, Movant's claim that he was not adequately advised concerning his sentencing exposure is without merit. Based upon the foregoing, the undersigned finds that Movant cannot demonstrate that Attorney Coleman's above conduct fell below an objective standard of reasonableness or that Movant's was prejudiced by counsel's failure.

Finally, Movant indicates that Attorney Coleman was ineffective in his failure to file a Motion to Suppress concerning the guns. As thoroughly explained in his Affidavit, Attorney Coleman failed to file a Motion to Suppress because he determined such to be inappropriate given the evidence and the procedural status of the case. Specifically, Attorney Coleman explains that "there was no constitutional basis for effectively suppressing any of the guns that I could see – particularly after hearing the recording of [Movant] admit to his father that he threw down the gun, and that officers had found 'all' his 'guns.'" "[S]trategic choices made after thorough investigation of law and facts relevant to plausible options are virtually unchallengeable." Strickland, 466 U.S. at 690, 104 S.Ct. at 2065. It is well recognized that classic tactical decisions may be made *without* a defendant's consent. See Sexton v. French, 163 F.3d 874, 885 (4th Cir. 1998)(emphasis added). Specifically, "[d]ecisions that may be made without the defendant's consent 'primarily involve trial strategy and tactics,' such as 'what evidence should be introduced, what stipulations should be made, what objections should be raised, and what pre-trial motions should be filed." Id.(citing United States v. Teague, 953 F.2d 1525, 1531 (11th Cir. 1992)). Thus, Movant cannot establish either prong of Strickland as to the above claim. The undersigned, therefore, respectfully recommends that Movant's above claim of ineffective assistance of counsel be denied.

15

### C.    Counsel's alleged failure to object to the "surprise enhancement" at sentencing.

In his Motion, Movant alleges that counsel was ineffective during the sentencing hearing because counsel failed to object to the "surprise enhancement." (Civil Action No. 2:20-00145, Document No. 59, p. 16.) Movant contends that on the day of sentencing, the United States "took a position to 'ambush' the defense, by assessing a (6) six level increase for a 'crime of violence' unrelated to the case are bar." (Id.) Movant explains that the enhancement was based upon his 2002 felonious assault that occurred in Michigan, where Movant was convicted by a jury. (Id.) Movant claims he had already been "given (3) three points for this unrelated conviction." (Id.) Movant complains that Attorney Coleman failed to subject his sentencing to "adversarial testing." (Id.) Movant claims that Attorney Coleman should have "at least sought a continuance." (Id.) Movant claims "there had not even been the slightest suggestion that an upward variance was under consideration" and Movant "was subject to an unfair surprise and denied a meaningful opportunity to address the crime of violence enhancement at sentencing." (Id., p. 17.) Movant claims that had counsel sought a continuance, he could have defended the accusations because a "crime of violence in an unrelated case cannot stand in this case" based upon Beckles v. United States.[2] (Id.) Movant alleges that he was "denied the opportunity to undertake the requisite legal research and factual inquiry necessary to formulate an effective response." (Id.)

In his Affidavit, Attorney Coleman states that Movant "was never 'ambushed' by the six-

---

[2] To the extent Movant relies upon Beckles, Movant's reliance is misplaced. On March 6, 2017, the United States Supreme Court held that the United States Sentencing Guidelines are not subject to a void for vagueness challenge under the Fifth Amendment in light of Johnson v. United States, 576 U.S. 591, 135 S.Ct. 2551, 192 L.Ed.2d 569 (2015). Beckles v. United States, ___ U.S. ___, 137 S.Ct. 886, 197 L.Ed.2d 145 (2017). In Johnson v. United States, ___ U.S. ___, 135 S.Ct. 2551, 192 L.Ed.2d 569 (2015), the United States Supreme Court held that the "residual clause" of the Armed Career Criminal Act ["ACCA"] was unconstitutionally vague and "imposing an increased sentence under the residual clause of the [ACCA] violates the Constitution's guarantee of due process." Movant was not sentenced under the ACCA.

16

offense level increase in his base offense level based upon his prior conviction for a crime of violence, identified as a 2002 felonious assault in Michigan." (Id., Document No. 77, p. 18.) Attorney Coleman explains that he discussed with Movant "the likely application of a base offense level 20 even before the United States tendered the first draft plea agreement." (Id., pp. 18 – 19 and Document No. 77-21.) Attorney Coleman also notes that Movant was provided with a copy of his Presentence Report and the United States' Sentencing Memorandum, which identified Movant's 2002 felonious assault conviction and its impact on his guideline calculations. (Id., Document No. 77, p. 19.) Concerning Movant's claim that counsel failed to challenge the enhancement, Attorney Coleman contends this is incorrect. (Id.) Attorney Coleman states that he filed objections to the Presentence Report's determination of a higher offense level based Movant's 2002 conviction. (Id.) Attorney Coleman also set forth his objections to the foregoing in his Sentencing Memorandum. (Id.) Attorney Coleman notes that the Court's sentencing minutes reflect that counsel objected to the treating of Movant's 2002 felonious assault conviction as a crime of violence, and using it to apply a higher base offense level in his guideline calculations. (Id.) Attorney Coleman notes that after a contested Sentencing Hearing, Movant's sentencing guidelines were recalculated to a Total Offense Level of 23 yielding an advisory range of 84 to 105 months of imprisonment. (Id.) Attorney Coleman explains that "[t]his was 126 months lower than originally calculated by the PSR (on the low end)" and "36 months lower than the statutory maximum of 120 months (again on the low end of the range)." (Id.)

In Response, the United States argues that Movant's above claim of ineffective assistance of counsel is without merit because "this issue was thoroughly litigated and there was no last minute surprise." (Id., Document No. 85, p. 12.) The United States explains that Attorney Coleman

objected on several separate occasions to the sentencing enhancement for Movant's prior conviction for a crime of violence. (Id.) The United States contends that Attorney Coleman initially raised his objection to the draft Presentence Report and in his sentencing memorandum. (Id.) Specifically, the United States explains that Attorney Coleman objected to the court treating Movant's 2002 conviction as a crime of violence and using it to apply a higher base offense level in his guideline calculations. (Id.) The United States explains that after the final Presentence Report was submitted to the Court, Attorney Coleman again raised objections at the sentencing hearing. (Id.) The United States acknowledges that Attorney Coleman challenges resulted in Movant's Base Offense Level being recalculated down to 23. (Id.) The United States claims that this "significant decrease illustrates that the strategy pursued by Mr. Coleman was one that was both effective and would be used by other competent attorneys." (Id.) Accordingly, the United States concludes that the issue of enhancement was "no last minute surprise" and the issue was thoroughly litigated by counsel. (Id.) Movant failed to address the above issue in his Reply. (Id., Document No. 87.)

Contrary to Movant's assertion, the record reveals that Movant was not 'ambushed' by the level increase to his Base Offense Level due to Movant's prior conviction for a crime of violence (2002 felonious assault conviction). The draft Presentence Report, Final Presentence Report, and the United States' Sentencing Memorandum all included an offense level increase based on this crime of violence. Thus, Movant was clearly notified of the possible enhancement prior to his Sentencing Hearing. (Criminal Action No. 2:18-00147, Document Nos. 35 and 52.) The record further contradicts Movant's claim that Attorney Coleman failed to challenge the enhancement to his Base Offense Level due to Movant's prior conviction for a crime of violence. In his Objections to the Presentence Report, Sentencing Memorandum, and during the Sentencing Hearing, Attorney

Coleman clearly challenged the increase of Movant's Base Offense Level arguing that Movant's prior conviction did not constitute a crime of violence supporting this enhancement. (Id., Document No. 36, Document No. 42, Document No. 47, Document No. 51, p. 5, Document No. 52, pp. 24 – 27.) Despite his objections, the District Court determined that Movant had a Base Offense Level of 20, which was elevated due to Movant's prior conviction that constituted a crime of violence. (Id., Document No. 51, p. 5.) Attorney Coleman, however, was successful in other challenges to the Presentence Report at the Sentencing Hearing. (Id.) Significantly, Attorney Coleman successfully challenged the cross-reference to the kidnapping guideline, which would have resulted in Movant receiving a Base Offense Level of 32. (Id.) After the contested Sentencing Hearing, Movant's sentencing guidelines were recalculated to a Total Offense Level of 23 yielding an advisory guideline range of 84 to 105 months of imprisonment. (Id.) Movant was additionally sentenced to the bottom of this advisory guideline range (84-months of imprisonment). (Id., Document Nos. 49 and 51.) Prior to the contested Sentencing Hearing, the Probation Department determined Movant's Total Offense Level was 33, yielding an advisory guideline range of 210 to 262 months.[3] (Id., Document No. 52.) Thus, the undersigned cannot find that Attorney Coleman acted unreasonably by failing to subject Movant's sentencing to "adversarial testing." Furthermore, Movant cannot show that he was prejudiced. Movant's challenge to the enhancement of his Base Offense Level was clearly considered and rejected by the District Court. Accordingly, the undersigned finds that Movant cannot establish either prong of the Strickland standard.

**D.    Counsel's failure to appeal.**

---

[3] The PSR initially determined Movant's Total Offense Level was 33, Criminal History Category V, resulting in an advisory guideline range of 210 to 262 months. The applicable statutory maximum, however, was capped at 120 months.

In his Motion, Movant alleges that "counsel was ineffective for not filing a notice of appeal at [Movant's] request." (Civil Action No. 2:20-00145, Document No. 59, pp. 18 - 22.) Movant alleges that he requested counsel to appeal because he was "expecting a sentence of 30 to 37 months" and "instead, he received 84 months." (Id., p. 20.) Movant complains that Attorney Coleman used "scare tactics" in advising Movant not to appeal. (Id., p. 22.) Movant filed his Affidavit in Support. (Id., pp. 24 – 27.) In his Affidavit, Movant states that Attorney Coleman "refused to file a Notice of Appeal." (Id., p. 27.) Movant further states that Attorney Coleman "threatened him and told him that if he filed an appeal, [Movant] would receive more time." (Id.) Movant states that "[a]t the time, counsel discouraged AFFIANT not to pursue any further appeal." (Id.)

In his Affidavit, Attorney Coleman explains that although Movant initially expressed a desire to file an appeal, after further consultation with counsel explaining the advantages verses the disadvantages, Movant indicated that he did not wish to file an appeal. (Id., Document No. 77, pp. 19 - 21.) Specifically, Attorney Coleman states as follows (Id.):

> 48.    Because movant's sentence was 36 months less than the sentence stated in movant's appeal waiver, immediately following his sentencing I advised Mr. Parnell that he was prohibited from filing any appeal based on the terms of his plea agreement. I further advised that if he did file a notice of appeal, the government would most likely prevail on a motion to dismiss based upon the appeal waiver. Movant was also advised that if he filed any appeal, he would risk having his plea agreement set aside due to his breach of the appeal waiver provision, which could expose him to being charged by indictment with additional offenses.

> 49.    I did not threaten Mr. Parnell with this information; I merely relayed the probable consequences if he violated the plea agreement appeal waiver in light of the sentence he received. Given the factual basis of his guilty plea, in particular the April 21, 2018 recorded telephone conversation with his father, Mr. Parnell was further advised that even if he did appeal – it was unlikely he would receive a favorable ruling on the merits. Finally, Mr.

Parnell was advised how any prospective appeal would allow the government to similarly challenge favorable rulings made during his sentencing hearing – such as that the United States had not established the cross reference for kidnapping – which would result in a remand of the case subject to a much higher sentencing guideline range. In my mind, having the additional three years in play after he had already been in custody since April 2018, did not justify any benefit he could obtain even through a successful appeal of his sentence.

50.  Mr. Parnell listened to me and demonstrated an understanding of the different points I discussed with him following his sentencing. At the time Mr. Parnell made the decision not to file a notice of appeal, he commented "you're right, it won't make any difference anyway."

51.  Mr. Parnell did not ask me to file a notice of appeal on his behalf on April 8, 2019, or at any other time during the fourteen day period for doing so.

52.  Movant contacted counsel by telephone prior to expiration of the period for filing any notice of appeal. Rather than ask that a notice of appeal be filed, Mr. Parnell requested a copy of the First Step Act. I subsequently provided the copy Mr. Parnell requested on or about April 23, 2019. See Ex. GG.

53.  Mr. Parnell's final judgment was entered on May 3, 2019. See Dkt. No. 49. My office forwarded a copy to Mr. Parnell at the Carter County Detention Center on May 6, 2019. See Ex. HH.

54.  By letter dated May 30, 2019, movant wrote the Court Clerk's office requesting copies of his docket sheet, and his plea agreement "for my personal file." He made no mention of filing any notice of appeal, or complaining that I had not filed any notice of appeal on his behalf. See Ex. II.

55.  By letter dated June 2, 2019, that I received on June 7, 2019, Mr. Parnell asked me to send him copies of his judgment, plea agreement, and his PSR. Mr. Parnell ended that letter with "I am filing for my 2255 appeal Mr. Coleman!" See Ex. JJ. By letter dated June 14, 2019, I provided Mr. Parnell with the documents he requested – excepting his PSR which is treated as contraband by the Federal Bureau of Prisons. See Ex. KK.

56.  On July 21, 2019, movant sent me another letter, which I received on July 24, 2019. Among other things, Mr. Parnell stated "I hate that I didn't file for a direct appeal. I was emotional[ly] messed up when he gave me that sentence Mr. Coleman. You should've said yeah for an appeal on my behalf

21

considering the issues at sentencing that caused that great enhancement in my time (guidelines)." See Ex. LL.

In Response, the United States argues that Movant's above claim of ineffective assistance of counsel is without merit because Movant instructed counsel not to file a notice of appeal. (Id., Document No. 85, p. 13.) The United States notes that Attorney Coleman reviewed with Movant his appeal rights immediately following sentencing and explained the consequence of filing an appeal given Movant had signed an appeal waiver. (Id., pp. 13 – 14.) The United States asserts that Movant decided not to file an appeal after consulting with Attorney Coleman on April 8, 2019, and failed to request Attorney Coleman to file an appeal any time during the filing period. (Id.) Accordingly, the United States requests that Movant above claim be dismissed.

In Reply, Movant argues that he was denied his appeal right by Attorney Coleman because "counsel's continuing consultation presented the impression the government could enforce the appellate waiver provision included within [Movant's] signed plea agreement and a direct appeal was unforeseeable." (Id., Document No. 87, p. 2.) Movant states that "counsel knew [Movant's] body language and demeanor at sentencing demonstrated [Movant] was dissatisfied with the sentence imposed, yet counsel neglected to follow through in relation to the objections, i.e., enhancements etc., appellative review." (Id., p. 3.) Movant alleges that "[e]ven within the 14 day window when [Movant] contacted Mr. Coleman via telephone, counsel continuously referenced the appellate waiver provision and detoured the conversation to the First Step Act." (Id.) Movant concludes that Attorney Coleman had "a misunderstanding about the appellate waiver." (Id., p. 3.) Citing Idaho v. Gorza, 139 S.Ct. 738 (2019), Movant complains this was erroneous advice because Movant had not lost all appellate rights. (Id., pp. 3 – 4.) Movant claims that "[h]ad counsel performed basic research of the law, he would have discovered [Movant] was entitled to a direct

22

appeal." (<u>Id.</u>, pp. 4 – 5.) Movant argues that "[a]t a minimum counsel should have at least mentioned the possibility of an appeal or made considerable efforts to advise [Movant] correctly." (<u>Id.</u>, p. 4.) Movant complains that "[i]nstead, Lex A. Coleman abandoned [Movant] immediately after the sentencing hearing." (<u>Id.</u>) Movant concludes Attorney Coleman failed to "provide 'meaningful' consultation" and "avoided all laws pertaining to appealing." (<u>Id.</u>)

The United States Supreme Court established a framework for analyzing claims of ineffective assistance of counsel in taking criminal cases on appeal in <u>Roe v. Flores-Ortega</u>, 528 U.S. 470, 120 S. Ct. 1029, 145 L.Ed.2d 985 (2000). The Supreme Court stated as follows in <u>Roe v. Flores-Ortega</u>, 528 U.S. at 480, 120 S.Ct. at 1036 (Citation omitted):

> [C]ounsel has a constitutionally imposed duty to consult with the defendant about an appeal when there is reason to think either (1) that a rational defendant would want to appeal (for example, because there are nonfrivolous grounds for appeal), or (2) that this particular defendant reasonably demonstrated to counsel that he was interested in appealing. In making this determination, courts must take into account all the information counsel knew or should have known. Although not determinative, a highly relevant factor in this inquiry will be whether the conviction follows a trial or a guilty plea, both because a guilty plea reduces the scope of potentially appealable issues and because such a plea may indicate that the defendant seeks an end to judicial proceedings. Even in cases when the defendant pleads guilty, the court must consider such factors as whether the defendant received the sentence bargained for as part of the plea and whether the plea expressly reserved or waived some or all appeal rights. Only by considering all relevant factors in a given case can a court properly determine whether a rational defendant would have desired an appeal or that the particular defendant sufficiently demonstrated to counsel an interest in an appeal.

The Fourth Circuit stated the <u>Roe v. Flores-Ortega</u> analytical framework as follows in <u>United States v. Witherspoon</u>, 231 F.3d 923, 926 (4th Cir. 2000):

> An attorney who fails to file an appeal after being instructed by his client to do so is per se ineffective. * * * When a client does not specifically instruct counsel to appeal, however, whether counsel has been ineffective by failing to appeal depends upon 'whether counsel in fact consulted with the defendant about an appeal.' * * * in this context 'consult' 'convey[s] a specific meaning – advising the defendant

about the advantages and disadvantages of taking an appeal, and making a reasonable effort to discover the defendant's wishes.' * * * If counsel has not consulted with his client, the court must then ask whether the failure to consult itself constitutes deficient performance. * * * The Sixth Amendment requires counsel to consult with the defendant concerning whether to appeal when counsel has reason to believe 'either (1) that a reasonable defendant would want to appeal (for example, because there are nonfrivolous grounds for appeal), or (2) that this particular defendant reasonably demonstrated to counsel that he was interested in appealing.' * * * Although the Roe Court declined to adopt a per se rule that defense counsel who fails to consult with the defendant concerning an appeal is ineffective, the Court did state, 'We expect that courts evaluating the reasonableness of counsel's performance using the inquiry we have described will find, in the vast majority of cases, that counsel had a duty to consult with the defendant about an appeal.' * * *

Id.(citations omitted). It is well established that "a criminal defense attorney's failure to file a notice of appeal when requested by his client deprives the defendant of his Sixth Amendment right to the assistance of counsel, notwithstanding that the lost appeal may not have had a reasonable probability of success" or that the defendant accepted a plea agreement containing an appeal waiver provision. United States v. Peake, 992 F.2d 39, 42 (4th Cir. 1993)(failing to file a requested appeal is *per se* ineffective assistance of counsel and a movant does not have to show prejudice in order to obtain relief); United States v. Poindexter, 492 F.3d 263, 271-73 (4th Cir. 2007)("[A]n attorney is required to file a notice of appeal when unequivocally instructed to do so by his client, even if doing so would be contrary to the plea agreement and harmful to the client's interests.") . The United States Supreme Court has clarified that the presumption of prejudice recognized in Roe v. Flore-Ortega applies regardless of whether a defendant has signed an appeal waiver. Garza v. Idaho, ___ U.S. ___, 139 S.Ct. 739, 749-50 (2019)("[W]here, as here, an attorney performed deficiently in failing to file a notice of appeal despite the defendant's express instructions, prejudice is presumed 'with no further showing from the defendant of the merits of his underlying

claims.'"); also see United States v. Glover, 363 Fed.Appx. 989, 990-91; Poindexter, 492 F.3d at 271-73.

A court must hold an evidentiary hearing on a Section 2255 Motion "[u]nless the motion and the files and records of the case conclusively show that the prisoner is entitled to no relief." 28 U.S.C. § 2255(b). Generally, whether to hold an evidentiary hearing is left to the sound discretion of the district court. Raines v. United States, 423 F.2d 526, 530 (4th Cir. 1970). When a movant presents a colorable Sixth Amendment claim showing disputed facts beyond the record and a credibility determination is necessary to resolve the issue, an evidentiary hearing is required. See Witherspoon, 231 F.3d 923, 925-27 (4th Cir. 2000); also see Raines v. United States, 423 F.2d 526, 530 (4th Cir. 1970). There, however, "is no prohibition against a court making credibility determinations based on competing affidavits in certain circumstances." Strong v. Johnson, 495 F.3d 134, 139 (4th Cir. 2007)("Choosing between conflicting affidavits without a hearing may be reasonable when one affidavit is cryptic or conclusory with respect to a contested issue of fact and the other affidavit sets out a detailed account of events."); also see United States v. Perez, 393 F.3d 457, 464 (4th Cir. 2004)(a court may discount "unsupported, conclusory statements" in an affidavit). The Fourth Circuit has explained that although a district court has before it conflicting affidavits, no evidentiary hearing is required where such would add nothing to the proceedings. United States v. Barsanti, 943 F.2d 428, 440 (4th Cir. 1991); also see United States v. Santana, 263 Fed.Appx. 334, 335 (4th Cir. 2008)("[I]t is not per se error for a district court to make credibility determinations on the basis of conflicting affidavits . . ."). "Holding an evidentiary hearing in those cases merely for the sake of holding an evidentiary hearing would squander scarce judicial

resources that may be better utilized elsewhere." Dryer v. United States, 2016 WL 1019438, * 6 (S.D.W.Va. Feb. 19, 2016).

Based upon a review of the entire record and the affidavits, the undersigned finds that the above case is one where an evidentiary hearing is not required. The undersigned notes Movant's Affidavit addressing the foregoing issue is vague and conclusory, while Attorney Coleman's statements are more detailed and are corroborated by documentary evidence (Exhibits GG, HH, II, KK, LL). (See Civil No. 2:20-00145, Document No. 59, 24 – 27 and Document No. 77, pp. 19 - 21.) Movant's vague version of the events is less credible than the more detailed version provided by Attorney Coleman. The undersigned does not find Movant's claim to be creditable that he requested counsel to appeal because Movant was "expecting a sentence of 30 to 37 months." As explained in Section A above, the evidence does not corroborate Movant's claim that he was promised a 30 to 37 month sentence. Although Movant's Affidavit indicates that the "expressly" informed Attorney Coleman following his Sentencing Hearing that he wanted to appeal, Movant further states that Attorney Coleman used "scare tactics" in advising Movant not to appeal. In the Reply, Movant states that "counsel knew [Movant's] body language and demeanor at sentencing demonstrated [Movant] was dissatisfied with the sentence imposed, yet counsel neglected to follow through in relation to the objections, i.e., enhancements etc., appellative review." Attorney Coleman states that Movant never expressly directed him to file a notice of appeal within the 14-day appeal period. In his Affidavit, Attorney Coleman explains that Movant elected not to appeal after he consulted Movant on the advantages and disadvantages of filing an appeal. Attorney Coleman provides copies of correspondences with Movants between April 8, 2019 (date of the Sentencing Hearing) and July 15, 2019, wherein Movant never indicated a desire to appeal or

26

complained of Attorney Coleman's alleged failure to file a notice of appeal at Movant's direction. (Civil Action No. 2:20-cv-00145, Document Nos. 77-36, 77-37, 77-38, 77-39.) There is no evidence that Movant requested Attorney Coleman to file an appeal other than Movant's self-serving and unsupported assertion that is inconsistent with the rest of the record. Accordingly, the undersigned finds that the evidence does not corroborate Movant's claim that he expressly directed Attorney Coleman to file a notice of appeal.

Finally, Movant mainly appears to complain that Attorney Coleman was ineffective in advising Movant not to file a notice of appeal. Movant places much weight upon Garza v. Idaho in arguing that Attorney Coleman incorrectly advised Movant that he was prohibited from filing a direct appeal due to the appeal waiver. The evidence, however, corroborates that Attorney Coleman correctly advised Movant of the advantages and disadvantages of filing a direct appeal. Specifically, Attorney Coleman first notified Movant that appeal waiver contained the Plea Agreement prohibited the filing of an appeal unless his sentence exceeded 120 months. Movant's imposed sentence of 84-months was 36 months less than the sentence set forth in the appeal waiver. Attorney Coleman correctly advised Movant that if he filed a direct appeal, he would be in breach of the Plea Agreement. Attorney Coleman then proceed to advise Movant of the advantages and disadvantages of filing an appeal. Attorney Coleman first advised Movant that even if he filed the appeal, Movant would likely be unsuccessful because (1) the United States mostly likely would prevail on a motion to dismissed based upon the appeal waiver, and (2) The factual basis of his guilty plea (including the April 21, 2018 recorded jail call) would not support a favorable ruling on the merits. Next, Attorney Coleman advised Movant of the possible negative consequence to filing a direct appeal: (1) Movant would risk having his Plea Agreement set aside due to his breach

of the appeal waiver provision, which could expose him to being charged by indictment with additional offenses; and (2) An appeal would allow the United States to challenge rulings at the Sentencing Hearing that were favorable to Movant, such as the finding that the United States had not established the cross reference for kidnapping. The undersigned finds that Attorney Coleman did not act unreasonably in giving Movant the foregoing advice. The evidence does not corroborate that Attorney Coleman advised Movant that he could not file a direct appeal. The evidence corroborates that Attorney Coleman advised Movant that he was prohibited by the appeal waiver from filing a direct appeal as such a filing would result in a breach of the plea agreement, and the advantages/disadvantages to filing a direct appeal. Accordingly, the record does not corroborate Movant's claim that Attorney Coleman failed to properly consult with Movant regarding his desire to appeal.

Based upon the foregoing, the undersigned respectfully recommends that Movant's above claim of ineffective assistance of counsel be denied.

**2.    <u>Rehaif v. United States</u>:**

In his Motion, Movant argues that in light of <u>Rehaif v. United States</u>, 139 S.Ct. 2191 (2019), Movant "was not fully informed of the nature of the charges he had pled guilty to and accepting any plea, was plain error." (Civil Action No. 2:20-00145, Document No. 59, p. 5.) Movant explains that since his sentencing on April 8, 2019, the Supreme Court decided <u>Rehaif</u> on June 21, 2019. (<u>Id.</u>) Movant explains that in <u>Rehaif</u>, the Supreme Court held that the government must prove both that the defendant knew he possessed a firearm and that he knew he belonged to the relevant category of persons barred from possessing a firearm. (<u>Id.</u>, pp. 5 – 6.) Movant argues that his charging Information under which he plead guilty "did not disclose ALL the elements of

a 922(g) offense." (<u>Id.</u>, p. 6.) Thus, Movant contends that the United States did not prove all elements. (<u>Id.</u>) Movant argues that <u>Rehaif</u> "requires automatic vacatur of the [Movant's] sentence and/or conviction, because Mr. Parnell admits that he did not know there was an omitted element that was required before pleading guilty." (<u>Id.</u>, p. 7.) Movant argues that his conviction violates the Fifth and Sixth Amendments because "neither the Court nor counsel could have effectively advised the [Movant] of ALL the elements required of a correct Indictment." (<u>Id.</u>) Movant contends that "[f]ailing to include the status of a defendant in the charging documents, amounts to a due process violation and any plea of guilty was accepted in plain error." (<u>Id.</u>, p. 8.) Movant contends that had he "known of ALL the elements that the Government must prove in a 922(g) situation, he would have elected to go to trial." (<u>Id.</u>)

        In Response, the United States acknowledges that <u>Rehaif</u> is retroactive on collateral review. (<u>Id.</u>, Document No. 85, p. 13.) The United States, however, argues that Movant procedurally defaulted this claim by failing to raise this constitutional attack on his Section 922(g) conviction before his conviction became final. (<u>Id.</u>) The United States acknowledges that default can be excused where a person attacking his conviction can establish (1) he is actually innocent, or (2) "cause" for the default and "prejudice resulting therefrom." (<u>Id.</u>) Although the United States acknowledges that default may be excused in these two circumstances, the United States argues that Movant cannot satisfy either. (<u>Id.</u>, p. 16.) First, the United States argues that Movant cannot demonstrate he is actually innocent of violating Section 922(g)(1). (<u>Id.</u>) The United States explains that Movant's "admissions to the stipulation of facts indicates that [Movant] was aware that he was a felon at the time he unlawfully possessed the firearm, giving rise to his § 922(g) conviction." (<u>Id.</u>) The United States notes that Movant admitted to three felony convictions under numerous

aliases. (<u>Id.</u>, p. 17.) Additionally, the United States notes that Movant's criminal history and previous terms of imprisonment demonstrate his knowledge of his status as a felon before possessing the firearms at issues. (<u>Id.</u>, p. 18.) The United States contends this is sufficient to defeat a <u>Rehaif</u> claim. (<u>Id.</u>)

Second, the United States argues that Movant cannot show cause for his default. (<u>Id.</u>, p. 18.) The United States asserts Movant's failure to raise his <u>Rehaif</u>-type claim earlier is not excusable on novelty grounds because the claim was available had Movant wanted to raise it. (<u>Id.</u>, pp. 18 - 19.) The United States argues that "[w]hile [Movant] has not linked his <u>Rehaif</u> claim to a claim of ineffective assistance of counsel, the government notes that doing so in an attempt to overcome his procedural default would be unavailing." (<u>Id.</u>) Although the United States acknowledges that cause can be established if counsel acted deficiently by failing to raise a particular claim, the United States explains that an attorney's failure to anticipate a new rule of law is not constitutionally deficient. (<u>Id.</u>, pp. 19 – 20.) Third, the United States asserts that Movant cannot establish prejudice resulting from his default. (<u>Id.</u>, p. 20.) The United States explains that when a Movant has not attempted to withdraw his guilty plea in the District Court, the Fourth Circuit reviews his plea challenge for plain error. (<u>Id.</u>) The United States argues that Movant cannot demonstrate that the error affected his substantial rights or establish a reasonable probability that, but for the error, he would not have entered the plea. (<u>Id.</u>, pp. 20 – 21.) The United States that because it "would have been able to prove [Movant's] knowledge of his prohibited status, [Movant's] decision whether or not to plead guilty would not have been affected by the new rule announced by <u>Rehaif</u>." (<u>Id.</u>, p. 22.) Finally, the United States argues that any <u>Rehaif</u> error was harmless because it had no substantial and injurious effect on Movant's conviction. (<u>Id.</u>, pp. 22 –

24.) Accordingly, the United States concludes that Movant's <u>Rehaif</u> claim is procedurally defaulted. (<u>Id.</u>, p. 26.)

In Reply, Movant argues that "to accept the government's invitation to speculate how [Movant] would defend against an element that was unknown would represent an untoward leap of logic." (<u>Id.</u>, Document No. 87, p. 5.) Movant appears to argue that the <u>Rehaif</u> status argument was novel at the time of his conviction because "any time spent trying to challenge what was irrelevant to the case at hand would have been futile." (<u>Id.</u>) Movant further argues that Attorney Coleman "coerced" Movant into signing the stipulation of facts. (<u>Id.</u>) Movant argues that he "could not contest an element that emerged as a consequence of a change in the law after sentencing." (<u>Id.</u>) Movant argues that "he was prejudiced when the charging instrument failed to fulfill the notice requirement." (<u>Id.</u>, p. 6.) Movant argues that "since his criminal complaint failed to give any indication that the government would have to show [Movant] knew his prohibited status, he was not afforded the constitutional protections guaranteed under the Fifth and Sixth Amendment." (<u>Id.</u>) Movant, therefore, concludes that his substantial rights were violated. (<u>Id.</u>) Citing <u>United States v. Gary</u>, 954 F.3d 194, 207 (4th Cir. 2020), Movant notes that the "Court stated because the defendant never originally received notice, the error is structural and the guilty plea was to be vacated." (<u>Id.</u>, p. 7.) Movant argues that similar to <u>Gary</u>, his conviction must be vacated. (<u>Id.</u>) Therefore, Movant concludes that his above claim is not procedurally defaulted and his conviction should be vacated. (<u>Id.</u>, p. 8.)

It is undisputed that Movant did not file a direct appeal asserting his <u>Rehaif</u> claim. The filing of a Section 2255 motion does not supplant or obviate the need to file a direct appeal. <u>Sunal v. Large</u>, 332 U.S. 174, 67 S.Ct. 1588, 91 L.Ed. 1982 (1947). The United States Supreme Court

explains that "a final judgment commands respect. For this reason, we have long and consistently affirmed that a collateral challenge may not do service for an appeal." United States v. Frady, 456 U.S. 152, 165, 102 S.Ct. 1584, 1593, 71 L.Ed.2d 816 (1982). A non-constitutional claim that could have been, but was not, raised on direct appeal may not be raised for the first time in a Section 2255 motion. Stone v. Powell, 428 U.S. 465, 478 n. 10 (1976). A constitutional claim that could have been, but was not, raised on direct appeal may not be raised for the first time in a Section 2255 motion unless the movant can show either (1) "cause and actual prejudice resulting from the errors of which he complains," or (2) "he must demonstrate that a miscarriage of justice would result from the refusal of the court to entertain the collateral attack." United States v. Mikalajunas, 186 F.3d 490, 492-93 (4th Cir. 1999). "The existence of cause for a procedural default must turn on something external to the defense, such as the novelty of the claim or a denial of effective assistance of counsel." Id. at 493. Actual prejudice is shown by demonstrating that the error worked to movant's "actual and substantial disadvantage," rather than just creating a possibility of prejudice. See Satcher v. Pruett, 126 F.3d 561, 572 (4th Cir. 1997)(quoting Murray v. Carrier, 477 U.S. 478, 494, 106 S.Ct. 2639, 2648, 91 L.Ed.2d 397 (1986)). "In order to demonstrate that a miscarriage of justice would result from the refusal of the court to entertain the collateral attack, a movant must show actual innocence by clear and convincing evidence. Mikalajunas, 186 F.3d at 493. "Typically, to establish actual innocence, a petitioner must demonstrate actual factual innocence of the offense of conviction, i.e., that petitioner did not commit the crime of which he was convicted; this standard is not satisfied by a showing that a petitioner is legally, but not factually, innocent. Id. at 494. The movant must show that "it is more likely than not that no

reasonable juror would have convicted him." Schlup v. Delo, 513 U.S. 298, 115 S.Ct. 851, 130 L.Ed.2d 808 (1995).

First, the undersigned will consider whether Movant can demonstrate "cause and prejudice" to overcome his procedural default of the Rehaif claim. Movant alleges he can satisfy the cause prong because a Rehaif-type claim was a novel argument that was unavailable at the time of his direct appeal. Movant contends that at the time of his direct appeal, such an argument would have been futile based upon well-established Fourth Circuit authority. Recently, this issue was considered in his District by the Honorable United States District Judge John T. Copenhaver, Jr. District Judge Copenhaver thoroughly considered and rejected the argument that the novelty of a Rehaif-type claim could constitute cause for the procedurally defaulted claim. Slocum v. United States, 2021 WL 3706681, * 8 - 9 (S.D.W.Va. Aug. 20, 2021)(J. Copenhaver). Specifically, District Judge Copenhaver stated that "[t]he Rehaif knowledge of status argument was not novel at the time of Movant's trial or direct appeal [in 2015], and no futility argument grounded in prior Fourth Circuit precedent will serve to establish cause under Bousley." Id.; also see Bousley v. United States, 523 U.S. 614, 623, 118 S.Ct. 1604, 1611, 140 L.Ed.2d 828 (1998). ("[F]utility cannot constitute cause if it means simply that a claim was 'unacceptable to that particular court at that particular time."). Next, Movant argues that counsel's ineffectiveness in failing to file an appeal asserting the Rehaif-type challenge demonstrates cause. A movant may establish cause by showing that defense counsel performed deficiently by failing to raise a particular claim. See Murray v. Carrier, 477 U.S. 478, 488, 106 S.Ct. 2639, 91 L.Ed.2d 397 (1986). Attorney Coleman, however, explains that Rehaif was decided on June 21, 2019, which was eleven months after Movant pled guilty and two months after his sentencing. (Civil Action No. 2:20-145, Document

33

No. 77, p. 22.) Attorney Coleman states that controlling law in the Fourth Circuit was that the United States did not have to prove that Movant was aware of his status as a convicted felon at the time he unlawfully possessed the firearm. (Id.) Attorney Coleman further explains that "Rehaif came out of Florida, with the Eleventh Circuit having sustained the district court's position on the scope of knowledge as an element under 18 U.S.C. § 924(a)(which was the same rule applied by the Fourth Circuit)." (Id.) Attorney Coleman, therefore, states that he "was not following Rehaif during [his] representation of [Movant], nor did [he] discuss anything with [Movant] in terms of an element of the offense beyond what binding Fourth Circuit precedents required at the time." (Id.) Attorney Coleman states that he and Movant "did discuss the nature of his prior felony convictions several times before he entered into any plea agreement in his case, plead guilty, and was sentenced." (Id.) Thus, Movant contends that Attorney Coleman's failure to anticipate a change in law constitutes ineffective representation and cause for his procedural default. It is well established, however, that "an attorney's failure to anticipate a new rule of law [is] not constitutionally deficient." United States v. McNamara, 74 F.3d 514, 516 (4th Cir. 1996). Thus, counsel's alleged ineffectiveness does not demonstrate cause for Movant's procedural default. Accordingly, the undersigned finds that Movant has failed to demonstrate cause to excuse his procedural default.

Next, the undersigned will consider whether Movant can satisfy the prejudice prong based upon Rehaif. Movant contends that "he was prejudiced when the charging instrument failed to fulfill the notice requirement." Movant states that he was not aware that the United States was required to prove he was aware of his status as a felon as an element of the Section 922(g) offense. Movant further complains that the United States did not prove this element. In Rehaif, the Supreme

Court held that the government must prove both that the defendant knew he possessed a firearm and that he knew he belonged to the relevant category of persons barred from possessing a firearm. In <u>Gary</u>, the Fourth Circuit determined "that it is plain error to accept a guilty plea based on a pre-*Rehaif* understanding of the elements of a § 922(g)(1) offense." <u>United States v. Gary</u>, 954 F.3d 194 (4th Cir. 2020). In <u>Gary</u>, the defendant pled guilty to possession of a firearm and ammunition by a person convicted of a felony. <u>Id.</u> Gary appealed his conviction to the Fourth Circuit. <u>Id.</u> While Gary's appeal was pending, <u>Rehaif</u> was decided by the United States Supreme Court and Gary filed a letter pursuant to Rule 28(j) asserting that the recent decision in <u>Rehaif</u> was relevant to his appeal. <u>Id.</u> at 199. In considering Gary's appeal, the Fourth Circuit acknowledged that in <u>Lockhart</u>, the Fourth Circuit determined that the failure to properly advise Lockhart of his sentencing exposure under the Armed Career Criminal Act and the <u>Rehaif</u> error "in the aggregate" were sufficient to establish prejudice for purposes of plain error review. <u>Id.</u> at 199-200. Thus, the Fourth Circuit considered and determined that a standalone <u>Rehaif</u> error satisfies plain error review because such an error was structural, which per se affects a defendant's substantial rights. <u>Id.</u> at 200-08. Reviewing Gary's plea challenge for plain error, the Fourth Circuit determined "that it is plain error to accept a guilty plea based on a pre-*Rehaif* understanding of the elements of a § 922(g)(1) offense." <u>Id.</u> at 202. Therefore, the Fourth Circuit vacated Gary's plea and conviction and remanded the case to the district court. <u>Id.</u> at 208. On January 8, 2021, the United States Supreme Court granted certiorari. <u>United States v. Gary</u>, ___ U.S. ___, 141 S.Ct. 974, 208 L.Ed.2d 510 (2021). On June 14, 2021, the Supreme Court reversed the Fourth Circuit's above judgment. <u>Greer, et al. v. United States</u>, ___ U.S. ___, 141 S.Ct. 2090, ___ L.Ed.2d ___ (2021). Specifically, the Supreme Court determined that Gary could not establish that the <u>Rehaif</u> error affected his

"substantial rights" pursuant to Rule 52(b). Id. at 2096-97. The Supreme Court explained as follows:

> In a felon-in-possession case where the defendant was in fact a felon when he possessed firearms, the defendant faces an uphill climb in trying to satisfy the substantial-rights prong of the plain-error test based on an argument that he did not know he was a felon. The reason is simple: If a person is a felon, he ordinarily knows he is a felon. "Felony status is simply not the kind of thing that one forgets." 963 F.3d 420, 423 (CA4 2020)(Wilkinson, J., concurring in denial of reh'g en banc). That simple truth is not lost upon juries. Thus, absent a reason to conclude otherwise, a jury will usually find that a defendant *knew* he was a felon based on the fact that he was a felon. A defendant considering whether to plead guilty would recognize as much and would likely factor that reality into the decisions to plead guilty. In short, if a defendant was in fact a felon, it will be difficult for him to carry the burden on plain-error review of showing a "reasonable probability" that, but for the *Rehaif* error, the outcome of the district court proceedings would have been different.

Id. at 2097. The Supreme Court concluded that Gary failed to carry his burden of showing that the Rehaif error affected his substantial rights because Gary had been convicted of multiple felonies, he never disputed the fact of his prior convictions, and he admitted that he was a felon when he pled guilty. Id. at 2097-98.

As District Judge Copenhaver stated in Slocum, the Supreme Court's decision in Greer is instructive on the prejudice issue. Slocum, 2021 WL 3706681, at * 9. Although Greer involved the application of the plain error review, "it is well-established that the cause and prejudice standard for overcoming procedural defaults presents movants with a great burden than plain-error review." Id. at * 10(citing United States v. Frady, 456 U.S. 152, 166-68, 102 S.Ct. 1584, 1593-95, 71 L.Ed.2d 816 (1982)). Additionally, several other district courts within the Fourth Circuit have applied Greer when considering whether a Section 2255 movant could meet the prejudice prong for excusing procedural default. See United States v. Campbell, 2021 WL 3375721 (W.D.Va. Aug. 3, 2021); United States v. Sumter, 2021 WL 3173176 (D.S.C. July 27, 2021); United States v.

36

<u>Crawley</u>, 2021 WL 2910724 (W.D.Va. July 12, 2021). Applying <u>Greer</u>, the undersigned finds that Movant cannot demonstrate that the <u>Rehaif</u> error resulted in prejudice. The Information charged, in pertinent part, as follows:

> 2.    At the time defendant ANTONIO PARNELL possessed the aforesaid firearm, he had been convicted of crimes punishable by a term of imprisonment exceeding one year as defined in 18 U.S.C. § 921(g)(20), that is:
>
> > a.    Convicted on or about April 12, 1999, in the Third Judicial Circuit Court of Michigan of Second Degree Home Invasion, in violation of Mich. Comp. Laws § 750.110A3;
> >
> > b.    Convicted on or about September 27, 2002 in the Third Judicial Circuit Court of Michigan of First Degree Home Invasion, in violation of Mich. Comp. Laws § 750.82, and of Felonious Assault, in violation of Mich. Comp. Laws § 750.82; and
> >
> > c.    Convicted on or about October 7, 2002, in the Third Judicial Circuit Court of Michigan of Possession of a Controlled Substance, less than 25 grams, in violation of Mich. Comp. Laws § 333.74032A5.

(Criminal Action No. 2:18-00147, Document No. 31, pp. 9 – 10.) Movant's Plea Agreement also included a Stipulation of Facts wherein Movant admitted to possessing a firearm after being convicted of three prior felony convictions. (<u>Id.</u>, pp. 11 – 12.) Specifically, the Movant admitted, in pertinent part, the following:

> On April 14, 2018, I was in the possession of a loaded Kahr Arms, Model P380, .380 caliber pistol. . . . I knew that I was not supposed to possess any firearms because I am convicted felon. I have the following felony convictions under the following names, and I have not had my civil rights restored to possess a firearm:
>
> > a.    Jerry L. Cagle - Convicted on or about April 12, 1999, in the Third Judicial Circuit Court of Michigan of Second Degree Home Invasion, in violation of Mich. Comp. Laws § 750.110A3;

b.    Anthony Shaw - Convicted on or about September 27, 2002 in the Third Judicial Circuit Court of Michigan of First Degree Home Invasion, in violation of Mich. Comp. Laws § 750.82, and of Felonious Assault, in violation of Mich. Comp. Laws § 750.82; and

c.    Anthony Shaw - Convicted on or about October 7, 2002, in the Third Judicial Circuit Court of Michigan of Possession of a Controlled Substance, less than 25 grams, in violation of Mich. Comp. Laws § 333.74032A5.

(Id.) Although Movant argues that Attorney Coleman "coerced" Movant into signing the Stipulation of Facts, Movant's argument is conclusory and unsupported by the record.[4] Finally, Movant's Presentence Report sets forth Movant's multiple felony convictions wherein Movant served sentences well in excess of one year. (Id., Document No. 52, pp. 14 - 16.) Accordingly, the undersigned finds that the record clearly indicates that Movant knew of his felon status at the time he possessed the firearm described in the Information. Thus, Movant has not demonstrated cause or prejudice to excuse his procedural default.

Finally, the undersigned will consider whether Movant can establish actual innocence to overcome his procedural default. As explained above, "actual innocence means factual innocence, not mere legal insufficiency." Bousley, 523 U.S. at 624, 118 S.Ct. at 1611; also see Mikalajunas, 186 F.3d at 494. Movant must show that "it is more likely than not that no reasonable juror would have convicted him." Schlup, 513 U.S. at 327-28, 115 S.Ct. at 851. The undersigned finds that Movant has failed to assert any new evidence proving his innocence. Movant merely contends that he is innocent based upon Rehaif. Rehaif would have required the United States to prove Movant knew he was a convicted felon on April 14, 2018 (the date in the Information wherein it is asserted

---

[4]  During the Plea Hearing, Movant affirmed that his plea was voluntary and not the result of any coercion or threats.

that Movant possessed a firearm). As set forth above, Movant's Information set forth Movant's prior felony convictions and Movant's Plea Agreement contained Stipulation of Facts where Movant admitted he knew that he "was not supposed to possess any firearms because [he is] convicted felon" and he had not had his civil rights restored to possess a firearm. (Criminal Action No. 2:18-00147, Document No. 31, pp. 9 – 12.) The undersigned finds there is absolutely no indication in the record that Movant is factually innocent of his Section 922(g) conviction. Accordingly, Movant fails to establish actual innocence to overcome his procedural default.

Based upon the foregoing, the undersigned finds that Movant cannot overcome the procedural default of his <u>Rehaif</u> claim because he has failed to demonstrate "cause and prejudice" or actual innocence. The undersigned respectfully recommends that Movant's Section 2255 Movant be denied.

## <u>PROPOSAL AND RECOMMENDATION</u>

Accordingly, the undersigned respectfully proposes that the District Court confirm and accept the foregoing findings and **RECOMMENDS** that the District Court **DISMISS** Movant's Motion under 28 U.S.C. § 2255 to Vacate, Set Aside or Correct Sentence by a Person in Federal Custody (Document No. 58) and **REMOVE** this matter from the Court's docket.

Movant is notified that this Proposed Findings and Recommendation is hereby **FILED**, and a copy will be submitted to the Honorable United States District Judge John T. Copenhaver, Jr. Pursuant to the provisions of Title 28, United States Code, Section 636(b)(1)(B), Rule 8(b) of the Rules Governing Proceedings in the United States District Courts Under Section 2255 of Title 28, United States Code, and Rule 45(c) of the Federal Rules of Criminal Procedure, the parties shall have fourteen days (filing of objections) and three days (if received by mail) from the date of

filing of these Findings and Recommendation within which to file with the Clerk of this Court, written objections, identifying the portions of the Findings and Recommendation to which objection is made, and the basis of such objection. Extension of this time period may be granted for good cause shown.

Failure to file written objections as set forth above shall constitute a waiver of *de novo* review by the District Court and a waiver of appellate review by the Circuit Court of Appeals. Snyder v. Ridenour, 889 F.2d 1363 (4th Cir. 1989); Thomas v. Arn, 474 U.S. 140, 106 S. Ct. 466, 88 L. Ed. 2d 435 (1985); Wright v. Collins, 766 F.2d 841 (4th Cir. 1985); United States v. Schronce, 727 F.2d 91 (4th Cir. 1984), cert. denied, 467 U.S. 1208, 104 S. Ct. 2395, 81 L. Ed. 2d 352 (1984). Copies of such objections shall be served on opposing parties, District Judge Copenhaver, and this Magistrate Judge.

The Clerk is requested to send a copy of this Proposed Findings and Recommendation to Movant, who is acting *pro se*, and counsel of record.

Date: August 27, 2021.



Omar J. Aboulhosn
United States Magistrate Judge